**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MARIANNE JASON and MICHAEL JASON,

    *Plaintiffs*,

v.

NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, *et al.*,

    *Defendants.*

Civil Action No. 17-7873

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This case concerns allegations that the negligent actions of Defendant National Railroad Passenger Corporation's ("Amtrak") resulted in injuries to Plaintiff Marianne Jason when she fell while traveling on a passenger train. The matter is presently before the Court by way of the parties' motions for summary judgment as to which state's law applies in this diversity action. Defendant filed a motion for summary judgment seeking a declaration that Virginia or North Carolina law applies. D.E. 40. Plaintiffs oppose the motion and filed a cross-motion seeking a declaration that New Jersey law applies. D.E. 41. The Court reviewed all submissions[1] made in support and in opposition to the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's Motion is **GRANTED** and Plaintiffs' cross-motion is **DENIED**.

---

[1] For purposes of these motions, Defendant's brief in support of its motion (D.E. 40-1) shall be referred to as "Def. Br."; Plaintiffs' brief in opposition and in support of their cross-motion (D.E. 41-2) shall be referred to as "Plfs. Opp."; and Defendant's opposition and reply brief (D.E. 42) shall be referred to as "Def. Reply".

I.  **FACTUAL AND PROCEDURAL BACKGROUND**[2]

On December 21, 2015, Plaintiffs Marianne and Michael Jason boarded Amtrak's Auto Train in Lorton, Virginia, which was headed non-stop to Sanford, Florida. DSOMF ¶¶ 1, 13-14. While traveling through North Carolina, Mrs. Jason fell down a set of internal stairs in the lounge car and fractured her humerus, the bone in her upper arm. *Id.* ¶ 19. After the fall, the Auto Train made an unscheduled stop in South Weldon, North Carolina. Mrs. Jason was taken off the train and brought to a medical center in Roanoke Rapids, North Carolina via ambulance. *Id.* ¶ 20. Mrs. Jason flew from North Carolina to Florida the next day, where she had surgery to repair her arm. *Id.* ¶¶ 21-22. Mrs. Jason later received additional medical treatment for her injuries in Alexandria, Virginia. *Id.* ¶ 26.

Plaintiffs initially filed suit in New Jersey state court, asserting claims for negligence against Amtrak. D.E. 1-3. Amtrak removed the matter to this Court. D.E. 1. On October 7, 2019, Amtrak requested leave to file a motion regarding the choice of law in this matter as it "will have a significant impact on this litigation." D.E. 34. Amtrak seeks a declaration stating that Virginia or North Carolina law applies. *Id.* Plaintiffs argue that New Jersey law should apply. D.E. 35. The parties were granted leave to file motions regarding the choice of law, D.E. 36, which they did, D.E. 40, 41.

II.  **SUMMARY JUDGMENT STANDARD**

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit

---

[2] The background facts are drawn from Defendant's Statement of Undisputed Facts ("DSOMF"), D.E. 40-1, and Plaintiffs' Response to DSOMF ("Plfs. Response to DSOMF") and Counterstatement of Undisputed Material Facts ("PSOMF"), D.E. 41-1.

2

under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*

*Corp.*, 477 U.S. at 322.  "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 250-51.

**III.   ANALYSIS**

As discussed, the sole issue presently before the Court is whether New Jersey, or North Carolina or Virginia negligence law applies in this diversity action.  The Court determines the applicable choice of law for a case that it has diversity jurisdiction over based on the forum state's choice of law rules.  *Klaxon Co. v. Stenton Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 399 (3d Cir. 1987).  New Jersey, the forum state here, utilizes the "most significant relationship" test to determine the applicable substantive law.  *See, e.g., Maniscalco v. Brother Int'l Corp.*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011); *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 373 (D.N.J. 2019).  The test consists of two prongs.  The first prong requires that a court assess the potentially applicable laws to determine if there is a conflict between the laws at issue.  *Maniscalco*, 793 F. Supp. 2d at 704.  Where no conflict exists, the Court applies the forum state's law.  *Id.*  If there is a conflict, the second prong requires the Court to "determine which state has the 'most significant relationship' to the claim by weighing the factors set forth in the Restatement [(Second) Conflict of Laws] section that corresponds to Plaintiff's cause of action."  *Id.* at 705.

**A.  Actual Conflict Between the State Laws**

Amtrak contends that there is an actual conflict between the applicable negligence laws of New Jersey, on the one hand, and Virginia or North Carolina, on the other.  Def. Br. at 10.  Plaintiffs do not appear to dispute this fact, and the Court agrees that there is an actual conflict.

An actual conflict exists "if there is a distinction between" the relevant laws at issue.  *Buccilli v. Nat'l Ry. Passenger Corp.*, No. 08-4214, 2010 WL 624113, at *2 (D.N.J. Feb. 17, 2010)

(internal quotation omitted). The New Jersey Comparative Negligence Act permits a plaintiff to recover if her "negligence was not greater than the negligence of the person against whom recovery is sought," though her recovery is diminished by her own negligence. N.J.S.A. 2A:15-5.1. Virginia and North Carolina, however, both apply common law contributory negligence standards, under which a plaintiff's contributory negligence acts as a complete bar to recovery. *Litchford v. Hancock*, 232 Va. 496, 499 (Va. 1987); *Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 401 (N.C. Ct. App. 2001). In this instance, Amtrak contends that Mrs. Jason's conduct contributed to her injury. *See, e.g.*, DSOMF ¶ 16 (explaining that Mrs. Jason consumed alcohol before she fell). Accordingly, if Amtrak establishes that Mrs. Jason's negligence contributed to her injuries, Plaintiffs would be barred from any recovery under Virginia or North Carolina law. But if New Jersey law applies, Plaintiffs may still be entitled to some recovery even if Amtrak establishes that Mrs. Jason was negligent. This difference constitutes an actual conflict.

### B. Most Significant Relationship

Because a conflict exists, the Court must evaluate the second prong of the choice of law analysis. Thus, the Court must weigh the factors in the applicable section of the Restatement (Second) of Conflict of Laws to determine which state has the most significant relationship to Plaintiffs' claims. Section 146 of the Restatement, which governs personal-injury actions, presumes that the substantive law aligns with the state where the injury occurred unless "some other state has a more significant relationship." *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 145-46 (2008). To determine whether another state has a more significant relationship, a court must consider the principles set forth in Section 145 and the general principles of Section 6.[3] *Id.*

---

[3] Section 145 of the Restatement governs tort claims generally and provides that a case will be "determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." *Mills*, 406 F.

A finding that another state has a more significant relationship under Section 145 overcomes the presumptive rule of Section 146. *Id.*

The parties do not dispute that Mrs. Jason was injured while the Auto Train was traveling through North Carolina. *See* Plfs. Response to DSOMF ¶ 19. Consequently, under Section 146, the Court presumes that North Carolina's law applies; the presumption can be overcome if another state has a more significant relationship to the matter. The Court, therefore, turns to Sections 145 and 6 to determine whether New Jersey or Virginia have a more significant relationship to the incident and the parties. Pursuant to Section 145, the Court must consider the following contacts: "(1) the location of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicil[e], residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Mills*, 406 F. Supp. 3d at 375-76 (citing Restatement § 145). After considering the contacts enumerated in Section 145, courts must weigh the significance of each contact based on the Section 6 principles, which are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Yocham v. Novartis Pharm. Corp.*, 736 F. Supp. 2d 875, 881 (D.N.J. 2010) (citing *Camp Jaycee*, 197 N.J. at 147). The Court's assessment is qualitative, not quantitative. *Ginsberg ex rel. Ginsberg v. Quest Diagnostics, Inc.*, 441 N.J. Super. 198, 218 (App. Div. 2015), *aff'd* 227 N.J. 7 (2016).

### 1. Location of the Injury & Place Where the Conduct Causing the Injury Occurred

Neither the first nor second factor establishes contacts in New Jersey. As discussed, neither

---

Supp. 3d at 374-75 (quoting Restatement (Second) of Conflict of Laws § 145 (1988)).

party disputes that the accident occurred in North Carolina. The first factor, the location of the injury, reflects a strong contact with North Carolina. And Amtrak argues that the second factor, the place where the conduct causing the injury occurred, weighs in favor of applying either North Carolina or Virginia law because the "alleged issues with staffing, lighting, training, train maintenance, crowd control or any other conduct occurring aboard or prior to the train's departure" happened in either North Carolina or Virginia. Def. Br. at 14. While it is unclear exactly where these acts occurred – it is clear that none of the alleged wrongful conduct that ultimately led to the injury occurred in New Jersey. Therefore, the second factor establishes at least some contacts with North Carolina or Virginia and no relevant contacts with New Jersey.

Plaintiffs counter that the first and second factors do not create a strong connection to North Carolina because any connection to that state was fortuitous. Plfs. Opp. at 6-7. "The place of injury becomes less important when it is simply fortuitous," meaning "it bears little relation to the occurrence and the parties with respect to the particular issue." *Camp Jaycee*, 197 N.J. at 145. The precise location of an accident, however, "may be considered fortuitous only when the [parties] did not intend or could not reasonably have anticipated being in that jurisdiction at the time of the accident." *Fu v. Fu*, 160 N.J. 108, 137 (1999). Plaintiffs argue that North Carolina is fortuitous because Mrs. Jason's injury could have occurred in any of the five states through which the Auto Train travels. Plfs. Opp. at 6, 7. But the Auto Train traveled on a set route through five states, one of which is North Carolina. *See* Def. Cert., Ex. B. Plaintiffs were presumably aware of which states the Auto Train passed through to get from Virginia to Florida. Because Mrs. Jason was injured while traveling on a planned route, she could have reasonably anticipated being in the five states while traveling on the Auto Train. Consequently, the location of the injury and the wrongful conduct is not fortuitous in this instance. *See, e.g.*, *Dolan v. Sea Transfer Corp.*, 398

7

N.J. Super. 313, 327 (App. Div. 2008) (concluding that accident in New Jersey was fortuitous because a New York resident and employee detoured into New Jersey to avoid traffic); *see also Yocham v. Novartis Pharm. Corp.*, 736 F. Supp. 2d 875, 882 (D.N.J. Aug. 31, 2010) (indicating, as an example, that if a plane traveling from city to city within a state "happens to overfly a second state, where the plane crashes," the crash location is fortuitous).

### 2. Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties

The Court next considers, under Section 145, "the domicil[e], residence, nationality, place of incorporation and place of business of the parties[.]" *Camp Jaycee*, 197 N.J. at 141. This factor establishes a contact in New Jersey as it is Plaintiffs' domicile. The "domicile of a person is the place where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Collins v. Yancey*, 55 N.J. Super. 514, 521 (Law Div. 1959). Moreover, "[a]n individual can take up residence in a new location and live there for years without changing domicile, so long as the individual forms no intention of staying indefinitely." *Malik v. Cooper Tire & Rubber Co.*, 59 F. Supp. 3d 686, 693 (D.N.J. 2014).

Plaintiffs both have New Jersey driver's licenses and own a home in Avalon, New Jersey, which is listed on their federal tax return. PSOMF ¶¶ 2-3. Mrs. Jason identifies the Avalon, New Jersey address as her permanent address. Plfs. Response to DSOMF ¶ 4. Before moving to Avalon, Plaintiffs owned a home in Basking Ridge, New Jersey for twenty-two years. PSOMF ¶ 1. Plaintiffs, however, were residing in Virginia for at least a portion of the time leading up to the accident. DSOMF ¶ 2; Plfs. Response to DSOMF ¶ 2. There is no indication that Plaintiffs intended to remain in Virginia indefinitely. *See, e.g.*, Plfs. Response to DSOMF ¶ 2 (explaining that Mrs. Jason visited her husband monthly at his corporate rental in Virginia). Accordingly, these facts are sufficient to establish that Plaintiffs were domiciled in New Jersey. *See, e.g.*,

8

*Washington v. Hovensa LLC*, 652 F.3d 340, 345-46 (3d Cir. 2008) (explaining that location of home ownership and driver's license, among other things, indicate an individual's domicile). And Plaintiffs' domicile establishes a contact with New Jersey.

By comparison, Amtrak is a District of Columbia corporation and its principal place of business is centered there as well. 49 U.S.C. § 24301(b). Thus, this factor also establishes a connection with the District of Columbia. Finally, the fact that Plaintiffs were residing (although not domiciled) in Virginia prior to the accident also creates a contact in Virginia.

### 3. Place Where the Relationship is Centered

Plaintiffs maintain that the fourth Section 145 factor, the place where the relationship between the parties is centered, favors New Jersey because Mrs. Jason purchased Plaintiffs' Auto Train tickets from her home in New Jersey and Amtrak sent a letter to her New Jersey address after the accident. Plfs. Opp. at 7. Defendant responds that no part of the parties' relationship is centered in New Jersey as Plaintiffs boarded the Auto train in Virginia and intended to travel on the train to Florida. Def. Br. at 16-17.

As to Mrs. Jason purchasing the Plaintiffs' tickets in New Jersey, "it is of little consequence because this is not a contracts case." *See Camp Jaycee*, 197 N.J. at 147 (finding that whether a camper signed up in New Jersey for a camp located in Pennsylvania was "of little consequence" in determining where the parties' relationship was centered as the tort claims at issue centered around the plaintiff's actual camp experience in Pennsylvania); *see also Fu*, 160 N.J. at 131 (finding that the New Jersey transaction permitting the plaintiffs to rent a car had "minimal significance" because the transaction was unrelated to the alleged tort). This is a personal injury case, so the purchase of the tickets in New Jersey is insignificant. Instead. the parties' relationship is centered in each of the states that Plaintiffs planned to travel on the Auto Train. *See Buccilli*,

2010 WL 624113, at *4. Because the train does not run through New Jersey, the parties' relationship is not centered in New Jersey.

### 4. Section 6 Principles

The competing interests of the states, interstate comity, and tort law principles all overlap in this matter. Therefore, the Court considers these factors together. New Jersey has an interest in "the fair compensation of injured New Jersey residents" and has "sought through legislation to lessen the penalties upon an injured person who shares responsibility for the injury." *Mastondrea v. Occidental Hotels Mgmt. S.A.*, 391 N.J. Super. 261, 286 (App. Div. 2007). Thus, New Jersey clearly has an interest in the application of its comparative negligence statutory scheme to its citizens. On the other hand, Virginia and North Carolina have an interest in regulating the conduct of persons and businesses in their states and to generally deter unsafe conditions. These interests are directly related to Virginia and North Carolina's contributory negligence scheme. Further, states have significant interest in deterring unsafe conduct of those who visit them, while other states have "less deterrence interest" outside of their borders. *See O'Connor v. Busch Gardens*, 255 N.J. Super. 545, 549 (App. Div. 1992) (finding that "Virginia has a significant interest in deterring . . . unsafe conduct of people and enterprises located there [, while] New Jersey has less deterrence interest in such conditions and conduct in Virginia.").[4] Since the allegedly unsafe conduct occurred in North Carolina, and potentially Virginia, but *not* in New Jersey, the competing interests of the states and their tort law supports either North Carolina or Virginia law. Further, New Jersey plaintiffs cannot expect this state's modified comparative negligence law to follow

---

[4] Plaintiffs argue that this case can be distinguished from *O'Connor* because an injury that occurs on a permanently located ride is categorically different from an injury that occurred in North Carolina randomly. Pfls. Opp. at 10-11. There may be some merit to this argument but, as discussed, the Court finds that Plaintiffs' contacts with North Carolina were not fortuitous.

10

them throughout the country as "[t]hat would be an impermissible intrusion into the affairs of other states." *Id.* at 549-60. As a whole, these factors favor the application of North Carolina law.

With respect to the parties' interests, courts consider the parties' "justified expectations" about their rights and responsibilities. *Camp Jaycee*, 962A.2d at 458. Plaintiffs have an obvious interest in having New Jersey's modified comparative negligence system applied here but have not reasonably explained why New Jersey's law should apply to their activities outside of the state. Further, this factor usually "plays little or no part in a choice-of-law question in the field of torts." *In re Accutane Litig.*, 235 N.J. 229, 262 (2018) (quoting *Fu*, 160 N.J. at 123). Accordingly, this principle does not favor New Jersey law.

Finally, the interests of judicial administration require courts to consider issues like practicality, uniformity, and predictability. *Camp Jaycee*, 197 N.J. at 155. In this instance, while true that applying New Jersey negligence law may be easier for the Court due to its familiarity with the law, doing so would stand in the way of predictability because the site of the injury generally dictates which law applies. Moreover, there is no reason to think that the Court is unable to apply a contributory negligence scheme to this matter nor is there an indication that doing so would be unduly complicated.

In sum, the Section 145 factors and Section 6 principles demonstrate substantially stronger contacts with North Carolina and, to a lesser extent, Virginia. In fact, New Jersey's primary contact is Plaintiffs' domicile. But this contact is not enough to outweigh the connection to North Carolina or Virginia. Moreover, the Section 6 principles weigh in favor of applying North Carolina law. Thus, the Section 145 factors and general principles of Section 6 do not demonstrate that any state has a more significant relationship to the incident and the parties than North Carolina, the place of the injury. Because no state has a more significant relationship than North Carolina,

Section 146 provides that North Carolina law should apply.

## IV. CONCLUSION

For the reasons states above, Defendant's motion for summary judgment (D.E. 40) is **GRANTED** and Plaintiffs' cross-motion for summary judgment (D.E. 41) is **DENIED**. An appropriate order accompanies this Opinion.

Dated: August 25, 2020

_____
John Michael Vazquez, U.S.D.J.