**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIANNE JASON and MICHAEL JASON,<br><br>*Plaintiffs*,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, *et al.*,<br><br>*Defendants*. | Civil Action No. 17-7873<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

Plaintiffs allege that Defendant National Railroad Passenger Corporation's ("Amtrak") negligence caused Plaintiff Marianne Jason to fall down a staircase while aboard a passenger train. Currently pending before the Court is Defendant's motion to preclude Plaintiffs' expert. D.E. 69. The Court reviewed the submissions[1] made in support and in opposition to the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is **GRANTED in part** and **DENIED in part**.

I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 2015, Plaintiffs Marianne and Michael Jason were passengers on an Amtrak train that was traveling from Lorton, Virginia to Sanford, Florida. Plfs' Cert. of Counsel,

---

[1] The Court refers to Defendant's brief in support of its motion (D.E. 69-1) as "Def. Br."; Plaintiffs' brief in opposition (D.E. 70) as "Plfs' Opp."; and Defendant's reply brief (D.E. 73) as "Def. Reply".

Ex. A at 20:15–21:3 ("Jason Dep."). At approximately 6:30 p.m., Mrs. Jason[2] joined her husband at the bar in the lounge car while they waited for a 7:00 p.m. dinner reservation in the dining car. *Id.* at 24:1-14. While in the lounge car, Mrs. Jason tried to approach an Amtrak employee to discuss being seated. *Id.* at 24:22-25:4. As she did so, "the train lurched forward . . . and [the employee] leaned back and [she] fell down the stairs" in the lounge car. *Id.* at 25:6-9. Mrs. Jason's back was towards the staircase when she fell. *Id.* at 27:1-4. As she fell, Mrs. Jason tried to grab hold of the staircase railing, while the train continued moving forward. Mrs. Jason was injured from her fall. *Id.* at 25:10-12; 27:19-28:12.

Plaintiffs filed suit in New Jersey state court, asserting claims for negligence against Amtrak, and Amtrak removed the matter to this Court. D.E. 1. The parties later filed motions for summary judgment regarding choice of law. Amtrak argued that Virginia or North Carolina law applies, and Plaintiffs maintained that New Jersey law should apply. D.E. 40, 41. On August 26, 2020, this Court decided the parties' motions for summary judgment, determining that North Carolina substantive law applies to Amtrak's alleged negligence. D.E. 50, 51. After indicating that it did not intend to file a motion for summary judgment, D.E. 58, Amtrak filed the instant motion. Through the motion, Amtrak seeks to preclude testimony at trial from Plaintiff's liability expert, Carl Berkowitz, Ph.D., PE. D.E. 69.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 guides a court's determination as to the admissibility of expert testimony. "Under the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also

---

[2] In their opposition brief, Plaintiffs refer to themselves individually as Mr. and Mrs. Jason. As a result, the Court does as well.

reliable." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To fulfill its role as gatekeeper, the court analyzes the admissibility of an expert's testimony pursuant to three requirements of Rule 702: "(1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact."[3] *Kannankeril*, 128 F.3d at 806 (citing *In re Paoli R.R. Yard PCB Litig.* ("*Paoli II*"), 35 F.3d 717, 741-42 (3d Cir. 1994)).

Thus, "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider ex rel. Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing *Paoli II,* 35 F.3d at 741-43). Qualification requires a witness to have specialized expertise. The Third Circuit has "interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert." *Schneider*, 320 F.3d at 404 (internal quotation omitted). Reliability means that the testimony "be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." *Id.* (citation and internal quotation marks omitted). Finally, fit requires that the expert's testimony "be relevant for the purposes of the case and must assist the trier of fact." *Id.*

---

[3] Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To be helpful, expert testimony must have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* (citation omitted).

When a district court evaluates the admissibility of expert testimony, perfection is not required. Rather, a district court should extend a "liberal policy of admissibility" to an expert's substantive and formal qualifications. *Paoli II*, 35 F.3d at 741. Similarly, for reliability a district court must find "good grounds" for the expert's belief after conducting a "flexible" inquiry. *Id.* at 742. Finally, a district court applies the same standard to find fit as for reliability. The Third Circuit has "emphasize[d] that the standard is not that high." *Id.* at 745. But the proponent of expert testimony must still prove the three requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999).

### III.  ANALYSIS

Here, Berkowitz would testify about Amtrak's alleged failures in following various safety standards and providing a safe environment for Plaintiffs and other Amtrak passengers. Plfs' Cert. of Counsel, Ex. I ("Berkowitz Report" or "Report"). Amtrak does not challenge Berkowitz's qualifications. Instead, Amtrak seeks to preclude Berkowitz because his Report and testimony fail to meet the reliability and fit requirements.

#### 1. Reliability

Amtrak maintains that the Report relies on inapplicable and irrelevant standards. Def. Br. at 7-12. In his Report, Berkowitz lists six "national standards of care of which Amtrak is required to comply." Report at 9. The standards are common carrier law; the General Duty clause of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 654; American Public Transportation Association ("APTA"), Standards and Practices; TCRP Report 165: Transit Capacity and Quality of Service Manual; Amtrak Service Standards for Train Service and On-

Board Service Employees Manual No. 9; and the American National Standards Institute ("ANSI") Z535. *Id.* Berkowitz's reliance on each of the these purportedly obligatory standards is problematic.

First, Berkowitz cites to "47 U.S.C. I" as the applicable common carrier law in this matter. *See* Report at 9 n.3. While not entirely clear, Berkowitz appears to be referring to Chapter 1 of Title 47, which generally pertains to telegraph lines and has nothing to do with common carrier law. *See* 47 U.S.C. §§ 9-16. Notwithstanding Berkowitz's apparently erroneous reference to Title 47, Berkowitz also discusses the general concept that common carriers, such as Amtrak, owe passengers, such as Plaintiffs, a duty of care and may be liable for a passenger's injuries by breaching this duty of care. Report at 9-10. But Berkowitz does not identify any specific standards or methods to measure whether Amtrak adhered to its common carrier duties. Therefore, this generalized explanation of common carrier law would not help a factfinder determine whether Amtrak was negligent. Moreover, "[e]xpert testimony is not permitted on governing law because the articulation of governing law is within the sole province of the judge." *United States v. Tartaglione*, 815 F. App'x 648, 650 (3d Cir. 2020).

Next, Berkowitz states that the General Duty Clause of OSHA sets forth standards with which Amtrak must adhere. Report at 10-11. The clause requires an employer to provide a workplace "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654. But Plaintiffs are not Amtrak employees, and the Report fails to explain how this generalized duty applies to Plaintiffs as passengers. In their opposition brief, Plaintiffs argue that OSHA standards can be used as evidence of negligence outside of the employment context. Plaintiffs also contend that in an employee-only train car, a staircase like the staircase at issue here is protected by a door. Plfs' Opp. at 11-12. This argument

5

is not in the Report. In fact, the Report states the opposite--Berkowitz lists OSHA as a standard that Amtrak must comply with. Report at 9. Thus, testimony about OSHA requirements risks confusion and undue prejudice.

In addition, even assuming Berkowitz makes it clear that OSHA is simply evidence of negligence through analogy, the General Duty clause alone is too vague to assist a jury. As its title implies, the clause is a generalized requirement that does not provide any relevant, specific guidance. In addition, in his Report, Berkowitz makes only passing reference to a door in the dining room stairway. It is unclear, whether this door is required by OSHA, which specific OSHA regulations apply, or even that the dining room staircase is an employee-only area. Thus, Berkowitz's reliance on the General Duty clause of OSHA does not assist the factfinder in determining whether the staircase at issue was hazardous under OSHA.

The Court reaches a similar conclusion to the extent Berkowitz's opinions are premised on the APTA standard. Again, Berkowitz's Report provides that Amtrak is required to adhere to the APTA standards. Report at 9, 11. The APTA standards, however, are voluntary, recommended practices for rail transit systems and related entities. Cert. of Rachel S. Rubenstein, Esq. ("Rubenstein Cert."), Ex. H at iv. Moreover, the standards explicitly state that "rail transit is not directly comparable to railroads (Amtrak, commuter, freight rail, etc.)." *Id.* Plaintiffs argue that "[t]he standards are not used to find Amtrak negligent but instead are provided to assist the trier of fact in understanding whether Amtrak can be found liable for Plaintiff's injuries." Plfs' Opp. at 15. Berkowitz does not make this distinction in his Report. As he did with OSHA, Berkowitz states that Amtrak is required to comply with the APTA standards in his Report. Report at 9. Accordingly, testimony about the APTA standard risks confusing the factfinder.

Next, the TCRP standards are irrelevant. Berkowitz includes a chart in his Report from the TCRP Report that pertains to passenger crowding. The chart, however, explains that it "describes the quality of service provided at different levels of crowding for vehicles designed for mostly standing passengers." Report at 12. Further, the introduction to the TCRP standards explains that the manual provides guidance on evaluating the quality of service, measuring transit capacity and reliability, and sizing for transit stops and stations. Rubenstein Cert., Ex. I at 1-1. Berkowitz, however, uses the chart to demonstrate that overcrowding in the lounge car led to an unsafe environment in the lounge car. Report at 9. Berkowitz fails to point to any aspect of the TCRP standards that address passenger safety. Accordingly, the TCRP standards are irrelevant to whether Amtrak breached any duty here.

Turning to the Employees Manual, Berkowitz opines that a train attendant should have warned passengers about the stairway and directed traffic away from the stairs. Berkowitz also faults Amtrak because there was only one employee in the lounge car when the accident occurred. Report at 13. Berkowitz then references train attendant responsibilities and staffing, as set forth in the Manual. *Id.* at 13-15. But the staffing numbers referenced in the Manual address the number of coach attendants for the whole train, not for specific cars. Moreover, the selected portions of the Manuel do not address responsibilities related to passenger control or passenger instructions. Therefore, the cited portions of the Employees Manual are also inapplicable.

Finally, Berkowitz relies on ANSI Z535, which he explains is a collection of standards guiding the design and use of safety signs to visually alert people of potential hazards. Report at 15. Berkowitz opines that Amtrak failed to provide sufficient warning signage for the stairway. *Id.* at 8. Amtrak maintains that it was not required to adhere to ANSI standards when the accident occurred. Def. Br. at 11. Plaintiffs counter that Amtrak recognizes ANSI standards and became

a member of ANSI in 2021. Plfs' Opp. at 17. But the accident here occurred in 2015. Jason Dep. at 15:21. As a result, the ANSI standards also appear to be inapplicable.

In sum, Berkowitz is precluded from addressing any of the national standards of care relied upon in his Report as they are unreliable, irrelevant, and/or could cause confusion. But to the extent Berkowitz's opinions are premised on his personal knowledge and experience in the field outside of these national standards of care, they are not precluded.

Amtrak also seeks to preclude Berkowitz under the reliability prong because he failed to conduct any testing, observation of the train in motion, or a reenactment. Def. Br. at 19. But Berkowitz is not an accident reconstruction expert. Rather, Plaintiffs represent that they retained Berkowitz to opine as to whether Amtrak's actions (or lack thereof) in safely maintaining and operating a passenger train contributed to Mrs. Jason's injuries. Plfs' Opp. at 8. As exhibited in his Report, Berkowitz relied on his "extensive experience working in the transportation industry," deposition testimony, and an independent evaluation of the train to reach his conclusions. Report at 6-7. Consequently, Berkowitz's Report is not based on "subjective belief or unsupported speculation", and he has "good grounds for his . . . belief." *Paoli II*, 35 F.3d at 742. Accordingly, the Court will not preclude Berkowitz's testimony because he failed to conduct testing or reenactment. If anything, Amtrak's arguments to this effect go to weight, not admissibility.

2. Fit

Amtrak maintains that Berkowitz must be precluded from testifying because his Report is not sufficiently connected to the facts in this matter. First, Amtrak maintains that Berkowitz's testimony must be precluded because he states that there were no railings or handholds, and this statement is inconsistent with the pictures in the Report and the deposition testimony. Def. Br. at 12. But the parties are arguing about different railing locations. Berkowitz's Report states that

8

the lounge car *passageway* did not have railings but does not include pictures of the passageway. Report at 7. While Mrs. Jason testified that she tried to grab a railing as she fell down the staircase, Jason Dep. at 25:10-12; 20-22; 27:19, she does not discuss railings in the passageway. Further, although pictures in the Report show *staircase* railings, Berkowitz does not discuss staircase railings in his Report. Thus, Berkowitz's discussion of the absence of passageway railings is not inconsistent with the evidence. However, Plaintiffs will have to lay a proper foundation as to why the lack of passageway railings is relevant.

Next, Amtrak seeks to prelude Berkowitz's testimony that Amtrak failed to provide sufficient warnings through signage because the photographs demonstrate that there was signage. Def. Br. at 14. Such testimony is also not inconsistent with the facts because, as noted, Mrs. Jason indicated that she had her back to the stairway before she fell. Whether Mrs. Jason saw the signs and whether the signage was appropriate is fair game for Berkowitz, provided that he does not rely on ANSI Z535. This is also the case for statements in the Report about crowding and capacity because Mrs. Jason testified that to her, the train car felt overcrowded. Jason Dep. at 39:3. Although Amtrak disagrees with Berkowitz's conclusions regarding crowding, that does not mean that his Report is inconsistent with the evidence.[4] Amtrak also argues that statements that the train swayed side to side are contrary to the facts. Def. Br. at 14. Mrs. Jason testified that she felt the train "lurch[] forward" and that as the train was moving it "was kind of pushed from side to side." Jason Dep. at 25:7-12. Again, the Report does not appear to be inconsistent. Mrs. Jason seems to suggest that the train was swaying and lurching, as set forth in the Report.

---

[4] However, the Court is concerned that Mrs. Jason's subjective belief of overcrowding may be different than an objective measurement of overcrowding (assuming that there are objective standards that define overcrowding). As a result, Plaintiffs will have to first lay a proper foundation demonstrating that a reasonable jury could conclude that there overcrowding at the time.

Amtrak, however, further argues that Berkowitz incorrectly states that only one employee was present when the accident occurred. Def. Br. at 13. Although Mrs. Jason only observed a single employee, Berkowitz cites to testimony from two Amtrak employees who were present when the accident occurred in the Report. Report at 26-27; 29. Moreover, in their opposition brief, Plaintiffs concede that two employees were present in the lounge car. Plf. Opp. at 21. As a result, to the extent Berkowitz's conclusions about employee staffing are based on the presence of a single employee, any testimony based on these conclusions is precluded based on fit and reliability. This is also the case for statements that Amtrak employees were not appropriately trained on crowd management or how to ensure safety of passengers. Def. Br. at 13. These conclusory statements are not supported by any facts in the record. Further, as discussed Berkowitz does not point to any relevant standards demonstrating such a failure. As a result, Berkowitz cannot testify that a lack of training contributed to Mrs. Jason's accident.

Finally, Amtrak seeks to preclude Berkowitz to the extent that his Report is premised on improper legal conclusions. Def. Br. at 15-17. As discussed, "[e]xpert testimony is not permitted on governing law because the articulation of governing law is within the sole province of the judge." *Tartaglione*, 815 F. App'x at 650. Interpreting the law and rendering legal opinions is also solely within the province of the Court. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). In this instance, Berkowitz renders numerous legal opinions in his Report such as that Amtrak "knew that the stairwell was a dangerous condition and as a common carrier, had the highest duty of care owed Mrs. Jason." Report at 1. Accordingly, Berkowitz's testimony is precluded to the extent it would amount to improper legal conclusions or divining the intent or knowledge of Amtrak.

## IV. CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 28th day of October, 2022,

**ORDERED** that Defendant's motion (D.E. 69) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendant's motion is **GRANTED** with respect to the following: Berkowitz is precluded from testifying about any of the National Standards of Care set forth in the Report, that only one Amtrak employee was present in the Lounge Car and that Amtrak's lack of employee training contributed to Plaintiffs' injuries. In addition, Berkowitz is precluded from testifying about the applicable law, from rendering legal opinions, and from opining on Defendant's knowledge or intent; and it is further

**ORDERED** that Defendant's motion is otherwise **DENIED**.

_____
John Michael Vazquez, U.S.D.J.